## MacCULLEN,
### *Petitioner,*

*v.*

## ADULT AND FAMILY SERVICES DIVISION,
### *Respondent.*

### (2-0302-AMR802-1; CA A35653)

720 P2d 1318

Mark A. Thorburn, Woodburn, argued the cause and filed the brief for petitioner.

Kendall M. Barnes, Assistant Attorney General, Salem,

argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Petitioner seeks judicial review of an order of the Adult and Family Services Division (AFSD) declaring that she received an overpayment of Aid to Dependent Children (ADC) benefits. The hearings officer found that petitioner had failed to cooperate, without good cause, with AFSD's efforts to obtain support for her minor child born out of wedlock. Petitioner argues that AFSD cannot recover the ADC benefits that she received before the determination that she had failed to cooperate was made. We affirm.

Any one of several different men could be the father of petitioner's child, born May 4, 1979. When applying for public assistance, she named three men as possible fathers. She did not name Gary Cornelius, although he could have fathered the child. The original birth certificate named no man as the father. In May, 1980, one year after the birth, petitioner and Cornelius filed a joint declaration of paternity, and a new birth certificate was issued, naming Cornelius as the father. Petitioner did not report that action to the Division.

The Division apparently became aware of the birth certificate amendment in the summer of 1984 and made an administrative determination that petitioner had failed to cooperate to establish paternity. It applied support sanctions and computed an overpayment of $20,847.83 for the period from June, 1980, through March, 1984.[1] Petitioner requested a hearing. The hearings officer upheld the overpayment determination.

42 USC § 602(a)(26)(B) provides:

"A state plan for aid and services to needy families with children must-* * *

"* * * * *

"(26)   provide that, as a condition of eligibility for aid, each applicant or recipient will be required-* * *

---

[1] Petitioner also received $683 in child support from Cornelius between October, 1981, and March, 1984. She did not report the payments, even though she testified that she knew that she was supposed to. Petitioner does not appear to contest the Division's recoupment of that amount and, therefore, we do not address it in this opinion.

"* * * * *

"(B)    to cooperate with the State (i) in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed, and (ii) in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed, or in obtaining any other payments or property due such applicant or such child, unless (in either case) such applicant or recipient is found to have good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary, which standards shall take into consideration the best interest of the child on whose behalf aid is claimed * * *."

Accordingly, the Oregon legislature enacted ORS 418.042(1), which states:

"Aid, as defined in ORS 418.035(2), shall not be granted to, or on behalf of, any applicant, or recipient and for as long as the applicant or recipient * * * refuses to cooperate with the Department of Human Resources in establishing the paternity of a child born out of wedlock and in obtaining support or other payments or property due the applicant or the child."

OAR 461-07-250 defines overpayment as

"any medical or nonmedical cash or vendor public assistance payment to, or on behalf of, any person in any amount exceeding that for which he/she is eligible. An overpayment may result from either agency or client error."[2]

The Division calculated the amount of overpayment pursuant to OAR 461-05-463(2):

"If the A/R fails to cooperate without good cause, the A/R's needs shall not be included in the ADC grant and at least fifty-one percent (51%) of the remaining ADC grant will be paid by vendor payment."

ORS 109.070(5) allows paternity to be established by a joint declaration of paternity filed with the Vital Statistics

---

[2] This case involves client error. OAR 461-07-260(2) provides:

"An overpayment due to client error is one which results when:

"* * * * *

(2) the applicant/recipient fails to report to the Adult and Family Services Division in a timely manner (10 days) the receipt of property, income and resources *or other circumstances which affect directly eligibility for,* or the amount of, assistance * * *." (Emphasis supplied.)

Unit of the Health Division of the Department of Human Resources. Filing the declaration results in preparation of a new birth certificate, as it did here.

■ The hearings officer's determination that petitioner had failed to cooperate and had received an overpayment of $20,847.83 is supported by substantial evidence. Although Cornelius could have fathered her child, petitioner failed to name him when applying for ADC benefits. Cornelius declared that he was the father in May, 1980, and provided some support for the child thereafter. Petitioner's failure to report these facts supports the finding that she failed to cooperate in establishing paternity and the conclusions that she obtained support to which she was not entitled and that it constituted an overpayment.

■ Petitioner argues that the Division may not recover any overpayment of public assistance that she received before the determination was made that she had failed to cooperate. We disagree. Cooperation is a condition of initial and continuing eligibility. If it is determined that a recipient is ineligible due to a failure to cooperate, she has received an overpayment which the state has a duty to recover as mandated by ORS 411.105(1), which provides:

> "* * * Upon the * * * change in circumstances which directly affects the eligibility of the recipient to receive assistance or the amount of assistance available to the recipient, the applicant, recipient or other person in the assistance household shall immediately notify the Adult and Family Services Division of the receipt or possession of such property or income, or other change in circumstances. The Division shall recover from the recipient the amount of assistance improperly disbursed by reason of failure to comply with the provision of this section."[3]

We have considered petitioner's other assignments and hold that they have no merit.

Affirmed.

---

[3] *Goldberg v. Kelly*, 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970), cited by petitioner, is inapposite. That case stands for the proposition that a fair hearing must be held before benefits are terminated. Petitioner had a fair hearing. Nothing in *Goldberg* suggests that, after a hearing, an overpayment of benefits already received cannot be recovered.